JUNG AND SONS

VS

No. 8844

SEWERAGE AND WATER BOARD

CHARLES F.CLAIBORNE ,Judge

December 11th 1922.

Court of Appeal
PARISH OF ORLEANS
FILED DEC 11/22
T J Stansbury

215

JUND AND SONS CO.Appellant.

VS.                                    NO.8844

SEWERAGE AND WATER BOARD

AND HAMPTON REYNOLDS.

CHARLES F.CLAIBORNE,Judge.

This is a damage suit resulting from excavations alleged to have been made in front of plaintiff's property by the Sewerage and Water Board to improve a pumping station.

Plaintiff alleged that for a number of years he had been engaged in the coal business and for that purpose operated a coal yard on St.Louis Street near the corner of Broad in the square bounded by Dorgenois and Toulouse ( Conti ), that said yard served as a substation from which it delivered coal to its customers; that he had gone to considerable expense in building said yard,by placing in it a wagon scale,laying of plank floor over the ground,fortifying the fences around it by driving piles sixteen feet deep to bear the weight of the coal, and building an incline over the sidewalk to facilitate driving into and out of the yard; that about the first day of September 1915 the Sewerage and Water Board and Hampton Reynolds began to excavate in front of the pumping station of the Sewerage and Water Board on St.Louis and Broad Streets and piled the spoils from said excavations in front of petitioner's coal yard in such quantity as to prevent all ingress and egress to and from said yard,and to completely hide it from view,notwithstanding petitioners protest; that in order to minimize damages and to prevent a complete suspension of petitioner's business he removed from said yard,the pilings,the scale,and the coal; that petitioner had to pay the rent of said yard after he had been deprived of the use of it; that about the 15 th of September all ingress to or from said yard had been effectially shut off by the accumulation of the spoils,and the defendants destroyed his signs in front of his yard; that in order not to lose his

.216

identity as a coal dealer and not to discontinue his business petitioner leased'and equipped another coal yard at great expense;that the defendants could have piled their spoils elsewhere and could have carried them away while they were being excavated without injury to petitioner;that the spoils remained piled in front of his yard several months;that in consequence of those obstruction he has suffered a loss of Seven hundred and fifty dollars which he claims from both defendants.

The Sewerage and Water Board filed a general denial and futher averred that all excavations were done by virtue of a contract dated May 15th 1915 with Hampton Reynolds who was an independent contractor and for whose acts in executing his contract the Board is not liable;and it annexed the contract to the answer.

For answer of Hampton Reynolds alleged that, denied all the allegations in plaintiff's petition contained and futher answering averred:" That during September 1915 under contract with the Sewerage and Water Board,and under the directions of its engineers,he began an excavation in front of the pumping station of the Sewerage and Water Board at St.Louis and Broad Streets,and piled the spoils from the said excavation on the sides of said excavation,and denies the allegations contained in the remainder of this paragraph.

"Further defendant avers that he at no time did he keep on the side of said excavation,more spoils than was absolutely necessary to refill the said excavation."

"Further answering defendant avers that what ever work was done by him in the area of drainage pumping station No.2 was executed under a contract with the New Orleans Sewerage and Water Board dated May 15th 1915,and under the actual direction of the engineers of that Board ; that your deffendant is not in any way responsible for any negligence on the part of said engineers or of the said New Orleans Sewerage and Water Board, that neither he nor any of his employees have been guilty of.

217

There was judgment for the defendants and the plaintiff has appealed.

In this Court the defendants have rested their defense upon two grounds:

First:  That it was not the interference with his business that caused the plaintiff to move away from his yard on St. Louis,but the fact that,prior to any interference,the plaintiff had intended to move and had leased another yard before any interference,and

Second : that there had been no sufficient interference with his business as justified his moving away,and that the work had been done with all proper care and deligence.

1st.  The conclusions which we have reached upon the second point render it unnecessary for us to consider the first point.

It is a general liability rule in law that no legal liabliity results from the exercise of a legal right,unless that right has been exercised in a negligent manner or through malice.11 A 711-35A 646-28 A 424-15 A 559-27 A 442-15 A 618 38 A 755 ( brief ) 46 A 521-145 La 818- Cooley on Torts P 81 39 Dalloy P 293.— 23 Bandry - Lac p 1080 N°  2856

Thus a coproprietor of a wall may demolish it and build a higher and thicker wall to support a heavier building.In the case of Levy vs Fenner 48 A 1389 the Supreme Court said on Page 1404 : "

"In demolishing the old and building the new party wall, under the conditions fully proved in this case,the plaintiff exercised an absolute right conferred upon him by the law. Under the maxim: Neminem laedit qui jure suo utitur" they were not bound to indemnify their neighbor for any inconvenience or injury necessarily occasioned by the exercise of the right. Such a work must necessarily incommode the neighbor.It cannot be prosecuted without an entry upon,and partial occupation of his premises.It must disturb his enjoyment and that of his tenants.It may give ground for the annulment of his leases, of for a diminution of the rents;It may prevent the renting

of his property. It may injure him in many ways. But so long and in so far as these injuries are inseperable from the exercise of the rights, the neighbor is bound to submit to them and can claim no indemnity therefor" see also 30 A 30. So an owner may build a fence as high as he pleases between his property and that of his neighbor, if his necessities require it, even through he injures his neighbor's property 28 A 424.

In Reynolds vs Shreveport 13 A 426 the Court said that the plaintiff had no cause of action against the City" for digging down several feet in front of his lots, thus leaving his building high above the level of the street, causing the sidewalk inv front of them to crumble away, thus rendering them difficult of access, destroying or impairing his rents, and making it necessary for him to go to great expense in excavating his lots and lowering his buildings" The reason of the decision was that the City had the right, in the exercise of its authority, to lower the grade of the streets and any damage suffered by any citizen was " damnum absque injuriæ".

In Hamilton vs RRD. 34 A 970 the Court said :

" A railway company having authority to build or rebuild a bridge across a navigable stream is not responsible ine damages for the temporary obstructions of the stream by scaffolding or by the construction of a temporary stationary bridge, and for unavoidable delay in the completion of the bridge."

In Vidalat vs City 43 A 1130 the Court said :

" This claim of $15,000 damages because access to the Pilie Market on the Poydras Street side was temporarily obstructed, on account of the banquette adjacent to the market house being torn up during some two or three months, while the street was undergoing repairs, is wholly without any foundation.

" While it is true that this condition of things was suffered to continue much longer than seemed necessary for a speedy and energetic accomplishment of the work, yet we cannot detect anything in the evidence that would justify us in the belief that either the City or the paving company were grossly

negligent of their obligations,or willfully did the plaintiff an injury and it is well established by authority,that such inconveniences as may fairly and legimately result from the making of needed public improvements,must be submitted to by all citizens of incorporate towns and cities·without compensation;each individual citizens being supposed to be recompensed by the enhancement of the general welfare of the community 2 Dillon Mun.Corp.4th Ed.Sec 990 .xxxx This is clearly a case of " damnum Absque injuries-" in this respect ". See also 28 Cyc.1065 ( D ) P.1074 " Unless negligent in the prosecution of the work,a municipality will not be liable for injury to property resulting from the construction of the- a sewer." P.1096 S 11-1315 P 1078 : nor for injury to business or for the temporary loss of the use of the property during the construction of a public improvements if the work is prosecuted with reasonable diligence. "

P.1086 " If the contractor keeps within the terms of his contract and performs the work with proper care and skill he is not liable for damages resulting to contiguous property See P.1316.1340 S 19\\" But when the subject matter is within the scope of the corporate powers and duties of municipal corporations the presumption is even in favor of the propréty and good faith of their conduct,and the complainant must make out a clear case of willful oppression to obtain relief from the Courts.See Police Jury of West Baton Rouge vs Bogman 11 A 94 Dubose vs Levee Couirs 11 A 166-167 Avery vs Police Jury 12 A 554 "

The defendants were engaged in· constructing a public improvement,in digging out an excavation·for installing a sewerage pump.The only question therefore is,did they use proper care and exercise reasonable diligence in the performance of their work?

Mr Jung,who was President and manager of the Plaintiff Company which was in the hands of a receiver at the time of the

220

trial of this case is the only witness for plaintiff.At the time
that the plaintiff was a going concern they had a clerk and also
wagons and drivers.Neither the Clerk nor any one of the drivers
was called as a witness.We are not satisfied that Mr Jung
makes it clear that injuries ingress and egress to and from
his coal yard was at any time necessary for the purpose of his
business,or was made impossible while the defendants were at
work.Nor do the photographs convince us that the gate was made
impassable.But if it was,it was such temporary incomvenience
as he was compelled to endure.While on the other hand three
witnesses testify for the defendants.They are : 1.Hyman Rabino-
witz and engineer,who was the resident engineer for the Sewerage
and Water Board,while the excavations complained of were going
on.He was at the time of the trial working for Lockett and Co.;
2. Henry F.Webb,an engineer who was,at the time of the excava-
tions,assistant engineer of the Board in charge of the construc-
tion; 3.Marcel Garsaud,an engineer an contractor ,who was
superintendent for Hampton Reynolds,contractor,for doing the
excavating work.They all three testify that there were carts
and men to remove the surplus earth that was excavated and was
not needed to refill,and that such earth was continiously
removed and that,at no time was the gate obstructed for any
length of time,and that in the space of one hour they could
have removed the mud shown in photograph P.3,and that Mr Jung
never complained to them of obstructions;that the obstructions,
if any were all of a temporary character.

  In the language of Major Garsaud:" What I did was what
I was required to do,and that was to excavate the dirt and place
it on St.Louis Street as it was being excavated,and at the
same time have the necessary carts,each and every day that
the dredge was working,in order to remove the dirt which would
not be later--on necessary to back fill around the completed
station."

  The trial judge thought defendants were entitled to a
judgment and we think so also. *Judgment affirmed*